**Howard EUBANKS, Sr., Plaintiff,**

**v.**

**Joseph GERWENS, individually and as Chief of the Fort Lauderdale Police Department, Daniel Losey, individually and in his official capacity as officer for the Fort Lauderdale Police Department, and James Wigand, individually and as officer for the Fort Lauderdale Police Department, Defendants.**

No. 90–6369–CIV.

United States District Court,
S.D. Florida.

Sept. 11, 1991.

Deutsch & Blumberg, P.A. by Mary B. Friedman, Miami, Fla., for plaintiff.

Gunther & Whitaker, P.A. by Robert H. Schwartz, Ft. Lauderdale, Fla., for defendants.

## ORDER

EDWARD B. DAVIS, District Judge.

THIS MATTER is before the court on the Defendants' motion to dismiss and motion to strike.

■ On August 7, 1991, Magistrate Judge Peter R. Palermo recommended that this court deny the motions. The court agrees for the reasons stated in the Magistrate's report.

Therefore, after an independent review of the record and being otherwise fully advised, it is hereby

ORDERED AND ADJUDGED that the Defendants' motion to dismiss and the defendants' motion to strike are DENIED.

DONE AND ORDERED.

## REPORT AND RECOMMENDATION

PETER R. PALERMO, United States Magistrate Judge.

THIS MATTER comes before the Court on Defendants' Motion to Dismiss, Docket Entry (D.E.) # 5, Motion to Strike, D.E. # 7; and Memorandum of Law in Support of Motion to Dismiss and Motion to Strike, D.E. # 6. These motions were referred to United States Magistrate Judge Peter R. Palermo by United States District Judge Edward B. Davis for a report and recommendation on the issues presented. *See* 28 U.S.C. § 636(b) (1988).

## FACTUAL BACKGROUND [1]

The Complaint alleges that at some time prior to March 25, 1988, Defendant Losey, a member of the City of Fort Lauderdale, Florida Police Department, and an individual named Calvin Johnson, reached an agreement whereby Johnson would act as a confidential informant. In essence, Johnson would assist Losey by acquiring evidence and information that Losey could use in order to obtain an arrest and conviction against a third party. According to the Complaint, Defendants Joseph Gerwin, Chief of the City of Fort Lauderdale Police Department, and James Wigand, also an officer in the Department and Losey's supervisor, approved and ratified the agreement between Losey and Johnson.

As part of a plea bargain agreement which was consummated on March 25, 1988, Johnson agreed he would be sentenced to ten years in jail on a pending charge unless he could arrange a narcotics transaction with an individual where at least one kilogram of cocaine was involved, in which case he would instead be sentenced to five years in jail. *See* Complaint at 3–4.

As of June 13, 1988, Johnson had already obtained several continuances on his sentencing hearing mainly due to the fact that he had thus far failed to provide Losey with an individual willing to deal in at least one kilogram of cocaine as per the terms of his plea agreement. On June 13, 1988 Johnson telephoned Losey and informed him that there was contraband in the vehicle of Plaintiff Howard Eubanks Sr., and that he was presently at Eubanks' business establishment where he had punctured a tire on Eubanks' vehicle rendering the vehicle temporarily stationary. At this time Eubanks did not have a criminal record other than some arrests pertaining to traffic violations. Losey, allegedly with the concurrence of Gerwin and Wigand, decid-

---

1. These facts have been gathered primarily from the Plaintiff's complaint. When reviewing a motion to dismiss, the facts alleged in the complaint are to be accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In addition, the court must construe the facts in a light that is favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development,* 711 F.2d 989, 994 (11th Cir.1983).

ed to search Eubanks' vehicle. Losey waited until the tire had been changed and the vehicle was once again mobile. Losey and other officers then stopped Eubanks' vehicle and conducted a search during which contraband was discovered. Between the time the tire was changed and the search was conducted a number of individuals, including Johnson were seen in and around the subject vehicle.

Eubanks immediately denied any knowledge or ownership of the contraband and asserted that it had been planted. Eubanks was arrested and incarcerated. On June 14, 1988, one day after Eubanks' arrest, the Defendants arranged for Johnson to undergo a polygraph examination attesting to the veracity of the information he had given the officers concerning Eubanks. He failed a series of polygraph tests. After this information was relayed to the Defendants, it was arranged for Johnson to be given another set of polygraph examinations, he also failed those tests. *See* Complaint at 6. The Complaint asserts that the prosecutor who was pursuing the case was never informed of these polygraph examinations.

Eubanks retained legal counsel and was acquitted of the charges in proceedings heard before Judge Arthur J. Franza, Circuit Court of the Seventeenth Judicial Circuit of Florida, at Broward County, on January 10, 1989.

As a result of these occurrences, Eubanks has incurred attorney's fees and other expenses in the amount of $30,000.00. Additionally, because of the incarceration and its attendant consequences, Eubanks alleges injury to reputation and loss of income in the amount of $100,000.00.

Plaintiff argues that the Defendants knew that Johnson had a motive to fabricate evidence for several reasons. Among others, he was a known felon and he was facing pressure to complete a deal to reduce his sentence pursuant to his March 1988, plea agreement. Plaintiff now brings this action alleging injury under 42 U.S.C. § 1983 and malicious prosecution.

Defendants assert several defenses. First, they argue they are entitled to quali-fied immunity. Second, Defendants assert that there can be no "supervisory liability" given the fact that qualified immunity applies and further that supervisory liability cannot be based on the theory of *respondeat superior*. Third, Defendants believe that this Court should not exercise its pendent jurisdiction on Plaintiff's malicious prosecution claim. Last, they contend that several paragraphs in the Complaint should be stricken as being legally deficient.

## STANDARD OF REVIEW

It is well established that a complaint will not be dismissed unless it appears beyond belief that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Likewise it has been held that the complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. at 102. *See also Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development, supra.*

## ANALYSIS AND DISCUSSION

It must be recognized at the outset that 42 U.S.C. § 1983 does not create any substantive rights, it merely provides a remedy for deprivations of rights established by the United States Constitution or the laws of the United States. *See Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Under the Fourth Amendment of the Constitution, which is applicable to the states through the Fourteenth Amendment, persons have a right not to be arrested unless there is probable cause. If this right is encroached, it may give rise to a claim for damages under Section 1983. *Motes v. Myers,* 810 F.2d 1055 (11th Cir.1987), *reh'g denied,* 837 F.2d 1095 (1988).

■ Defendants have raised the issue of qualified immunity. Such immunity is usually available where the officials involved believed their actions to be lawful. *See Clark v. Evans,* 840 F.2d 876 (11th

Cir.1988); *Barker v. Norman,* 651 F.2d 1107 (5th Cir.1981)[2]. In this instance, that would mean that the Defendants believed they had probable cause to perform a valid search and then to arrest Eubanks. A law enforcement officer has probable cause to effect an arrest "if the facts and circumstances within the officer's knowledge, of which he or she has *reasonably trustworthy information,* would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990) (emphasis added). It is thus based on objective criteria. *Clark,* 840 F.2d at 881. While it is true that it has been written that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law", *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), the information provided by Johnson to Defendants could not objectively be labeled "reasonably trustworthy." Johnson was a known criminal under intense pressure to provide the Defendant Losey with a narcotics dealer. Additionally, Defendants knew Johnson had unlimited access to the vehicle immediately preceding the search of the vehicle and the discovery of cocaine. Also significant is the fact that Johnson subsequently failed numerous polygraph examinations. Admittedly while that is not related to probable cause for the arrest since it occurred subsequently, the fact that Johnson underwent various polygraph examinations the day after Eubanks' arrest and later, is telling in and of itself and is pertinent as to Plaintiff's malicious prosecution claim.

The courts have made it clear that the standard governing these situations is not whether probable cause exits, but whether arguable probable cause exists. *Von Stein,* 904 F.2d at 579, *citing, Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989). The Eleventh Circuit has actively recognized that an officer who effects an arrest without probable cause may be protected by qualified immunity. *Tillman v. Coley,* 886 F.2d 317 (11th Cir.), *reh'g denied,* 893 F.2d 346 (1989). But presently, at the motion to dismiss stage and under *Conley,* 355 U.S. 41, 78 S.Ct. 99, and its progeny, even the standard of "arguable probable cause" has not been met.

■ Defendants argue there can be no "supervisory liability" given the fact that qualified immunity applies and that supervisory liability cannot be based on the theory of *respondeat superior.* It is well settled that supervisors cannot be held liable for the acts of subordinates based solely on the theory of *respondeat superior,* and that a Section 1983 claim cannot be based on vicarious supervisory liability. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally, however, in order for supervisory liability to be a viable option, Plaintiff must establish the Defendants failed to control subordinates with "known lawless propensities." *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981), *reh'g denied,* 668 F.2d 536, *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982), *quoting, Vasquez v. Snow,* 616 F.2d 217, 220 (5th Cir.1980). Alternatively, the Plaintiff must demonstrate that the Defendants' actions constituted either a "custom" or "culpable nonfeasance sufficient to constitute "malicious intent". *McLaughlin,* 662 F.2d at 1388, *citing, Walters v. City of Ocean Springs,* 626 F.2d 1317 (5th Cir.1980); *Whitehurst v. Wright,* 592 F.2d 834 (5th Cir.1979); *see also Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982).

In the instant case, Defendants Gerwin and Wigand both knew that Losey had made a deal with Johnson. Allegedly, they were also aware that Johnson was under considerable urgency to provide the Defendants with an individual willing to partake in a drug "deal" consisting of at least one kilogram of cocaine. Exactly how much Defendants Gerwin and Wigand actually knew will no doubt be refined upon further

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

discovery. Indeed, this may undoubtedly become the subject of a later motion for summary judgment. However, at this stage of the proceedings, on the face of the Complaint the Plaintiff has made the requisite showing. *See Conley,* 355 U.S. 41, 78 S.Ct. 99.

 The Defendants have argued that this Court should decline to exercise its pendant jurisdiction. Obviously this argument would carry much greater weight if the undersigned had recommended dismissal of the federal claims, which the undersigned has declined to do. Additionally, the Supreme Court of the United States, in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), wrote:

> The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantially of the federal issues there is *power* in federal courts to hear the whole.

*Anderson v. Nosser,* 438 F.2d 183, 189 (5th Cir.1971) (emphasis in original), *modified on rehearing,* 456 F.2d 835, *cert. denied,* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972), *quoting, United Mine Workers of America,* 383 U.S. at 725, 86 S.Ct. at 1138. Under this criterion, it is incumbent upon this court to exercise its pendent jurisdiction.

Further, in light of the foregoing analysis and discussion, it is clear that the paragraphs in the Complaint complained of are legally sufficient, at this stage of the proceedings, to withstand the motion to strike.

It is therefore

RECOMMENDED that Defendants' Motion to Dismiss; Motion to Strike; and Memorandum of Law in Support of Motion to Dismiss and Motion to Strike, be DENIED.

Pursuant to Local Magistrate Rule 4(b), the parties to this action shall have ten (10) days from the date of the receipt of this report to file their objections with United States District Judge Edward B. Davis.